No. 18,185.

OLIVE BOGER, ET AL. *v.* PRITCHARD LUMBER·COMPANY.

(322 P. [2d] 105)

Decided February 24, 1958.   Rehearing denied March 10, 1958.

Mr. ALBERT J. TOMSIC, for plaintiffs in error.

Mr. E. U. SANDOVAL, Mr. FORREST C. NORTHCUTT, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

The parties appear in this court in the same order as they appeared in the trial court, and we will refer to them as they there appeared.

Plaintiffs alleged ownership of certain described real estate to which defendant corporation claimed an adverse right or interest by reason of a mechanic's lien filed by it against said property. It was alleged in the complaint that the claimed interest of defendant was without foundation or right. Plaintiff sought judgment invalidating the claimed lien.

Defendant denied that the claimed lien was invalid, and filed a counterclaim alleging that plaintiffs were indebted to defendant for the purchase price of certain awnings, with attachments, manufactured and constructed pursuant to their order. The total amount claimed to be due defendant was $530.51 plus interest. During the trial defendant withdrew $38.56 of the amount first claimed, being the alleged value of metal supports for the awning. This item being the subject of a conflict in the evidence, counsel for defendants withdrew it to avoid a jury determination thereon.

In their answer to defendant's counterclaim plaintiffs did not allege any affirmative defense. The portion of the answer which tendered the issue for trial was only that plaintiffs "deny the allegation contained in Paragraph 2 of the counterclaim." Paragraph 2 of the counterclaim thus denied reads as follows:

"The plaintiffs and each of them are indebted to the defendant for the following goods, wares and merchandise sold and delivered by defendant to plaintiffs at plaintiffs' special instance and request at the time and for the prices hereinafter set forth: * * *"

A description of the awnings and the attachments are then set forth.

On the date of the trial it was stipulated by counsel for both sides that the mechanic's lien filed by defendant

would be released, and that the cause should proceed to trial upon the issues raised by the counterclaim and plaintiff's denial of liability thereon.

A jury was selected to try the action but upon conclusion of the evidence counsel for defendants moved for a directed verdict in favor of defendant on the counterclaim. This motion was sustained and judgment was entered in favor of defendant for the sum of $472.50.

At the time the motion for directed verdict was granted the trial court made the following comments, inter alia:

"By an analysis of the evidence here we find the plaintiff husband ordered the awning and the hood, he was not concerned with the price, but rather he wanted something that would fit into his plan in his large beautiful home in the mountains.

"The Court believes that the plaintiffs received what they ordered, although the original order was altered or modified somewhat at the suggestions of the manufacturers of this awning and hood, and with the evident consent of the plaintiff wife.

"From the evidence, it appears that the awnings had to be specially assembled, it was not something that was carried in stock. This merchandise was delivered to the building site at Cuchara, and there is where the unfortunate genesis of this whole case originates, over the more or less reckless statement or observation by the carpenter, that he did not believe this awning would hold up under the weather conditions in that neighborhood, and the plaintiff became doubtful. Now this remark was unfortunate, because it was not based upon experience or observation that would justify such a remark, nor give it too much credence.

"Now we have the evidence on behalf of the defendant, founded upon scientific tests and actual tests, which convinces the Court that this awning was adequate and sufficient for whatever weather conditions might have been encountered in the Cuchara community.

"And the Court must conclude, from an analysis of all of the .evidence, that there is not sufficient evidence· to go to the jury ·on the question of whether the plaintiffs ordered the awning that , was · delivered, and whether the · same was sufficient for the uses they had planned for it. . And disregarding entirely ·the question of implied warranty."

The trial court properly 'found that there was: no evidence to justify submission. of. the case to the jury·. The witness called by plaintiffs to establish a justification for their refusal ·to accept the awning, which forms the .basis of defendant's counterclaim, fell far short of establishing a breach of implied warranty. He was a carpenter .who without subjecting the awning .to any tests whatever, ·and without experience or knowledge concerning the strength and durability of the materials of which the awning was composed, stated that he did .not think the awning, if erected, would stand up under the weight of snow it might be called upon to bear. After the awning had been sent back to the defendant company by plaintiffs it was set up in defendant's lumber yard and was subjected to weight loads by a qualified engineer who testified to facts proving conclusively that the awning would stand· up under any conditions to which it might be subjected at plaintiffs' mountain home.

One point on which plaintiffs rely is that there was an implied warranty on the part of defendant that the awning and supporting posts delivered to plaintiffs would correspond to the description thereof as shown in an. advertisement put out by the manufacturer of the awnings in Denver. This literature admittedly was shown to plaintiffs by defendant who supplied the Denver manufacturer with the dimensions of the awning, as indicated by plaintiffs. After the Denver manufacturer received the order a change in design was recommended from a concave pattern to a straight pattern for the reason that under the specifications as ordered the concave pattern would leave insufficient head room

clearance. There is no doubt from the evidence that plaintiffs approved this change in design. However, the principal ground of the denial of liability by plaintiffs is that there was a breach of an implied warranty of quality and fitness of the awning to serve the purpose for which it was intended, namely, to shelter and protect the area from accumulations of snow.

■ The witness called by plaintiffs, for the purpose of establishing this claimed breach of warranty, stated inter alia:

"Q. Have you installed anything on various buildings or attached thereto, that were more or less in the nature of an awning? A. Lots of them. Q. Will you tell us what they would be? A. But they wasn't just like this awning, they were built out of different things.

\* \* \*

"THE COURT: Did you test this awning as to any stress it would stand? THE WITNESS: No, I didn't say it wouldn't stand up, I didn't think it would.

\* \* \*

"MR. NORTHCUTT: You stated you have installed awnings, were you referring to metal awnings? A. No, I built them out of wood, structural blocks, that kind of stuff. Q. You never have installed one of these metal awnings? A. That's right. Q. So you don't know the different stresses on metal, do you? A. Well, I know about iron, it has got to hold it up. I know the purpose of having iron is to hold it up. Q. You don't know how much weight iron of a certain size will hold up? A. Not exactly. Q. Are you familiar with the FHA rules about metal awnings? A. No. Q. You don't know how much it would require? A. No. Q. You don't know how the posts of this awning compares with the requirements of the FHA? A. I don't. Q. You have no knowledge how much weight this awning will hold, because you haven't attempted to make a test? A. No, sir."

In the face of the positive evidence offered by defend-

ant concerning the design, material and stability of the awning, the above-quoted statements were lacking in probative force and created no issue for the determination of the jury.

The judgment of the trial court is affirmed.

MR. CHIEF JUSTICE HOLLAND and MR. JUSTICE SUTTON not participating.